IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

FILED
APR 2 3 2009
CLERK, US DISTRICT COURT
NORFOLK, VA

BUILDERS MUTUAL INSURANCE COMPANY     )
P.O. Box 150006                       )
Raleigh, North Carolina 27624-0006    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )   Civil Action No. 2:09cv185
                                      )
DRAGAS MANAGEMENT CORPORATION         )
4538 Bonney Road Road, Suite A        )
Virginia Beach, Virginia 23462        )
                                      )
Serve: Elwood C. Isley, Jr.           )
       501 Independence Parkway, Suite 201 )
       Chesapeake, VA 23320           )
                                      )
                                      )
            and                       )
                                      )
FIREMEN'S INSURANCE COMPANY OF        )
   WASHINGTON, D.C.                   )
                                      )
Serve: John M. Lent                   )
       Firemen's Insurance Co. of Washington, D.C. )
       4820 Lake Brook Drive, Suite 300 )
       Glen Allen, VA 23060           )
                                      )
                                      )
            and                       )
                                      )
THE HANOVER INSURANCE COMPANY,        )
                                      )
Serve: CT Corporation System          )
       4701 Cox Road, Suite 301       )
       Glen Allen, VA 23060           )
                                      )
            Defendants.               )

## COMPLAINT
(Declaratory Judgment)

Plaintiff Builders Mutual Insurance Company ("Builders Mutual"), by counsel, by and for its cause of action against Defendants Dragas Management Corporation ("Dragas"), Firemen's Insurance Company of Washington, D.C. ("Firemen's"), and The Hanover Insurance Company ("Hanover"), states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332.

2. Venue is proper pursuant to 28 U.S.C. § 1391.

3. The amount in controversy exceeds $75,000.

4. Pursuant to 28 U.S.C. § 2201, Builders Mutual is entitled to seek a declaration of its obligations under one or more contracts of insurance it issued to Dragas.

### PARTIES

5. Plaintiff Builders Mutual is a mutual insurance company incorporated under the laws of North Carolina with its principal place of business in North Carolina.

6. Defendant Dragas is a Virginia corporation with its principal place of business in Virginia Beach, Virginia.

7. Defendant Firemen's is a Delaware corporation with its principal place of business in Richmond, Virginia.

8. Defendant Hanover is a New Hampshire corporation with its principal place of business in Worcester, Massachusetts.

## FACTS COMMON TO ALL COUNTS

9.      Builders Mutual issued a Commercial Package Policy, Policy No. CPP 0029923 01, and a Commercial Umbrella Policy, Policy No. UMB 0008545 00, to Dragas, both for policy periods from March 1, 2008, to March 1, 2009. The limits of coverage under the Commercial Package Policy are $1 million per occurrence and $2 million aggregate with a $100,000 per occurrence deductible. The limits of coverage under the Commercial Umbrella Policy are $7 million per occurrence and $7 million aggregate, with a $10,000 retention. Copies of the 2008-2009 Commercial Package Policy and Commercial Umbrella Policy are attached as **EXHIBITS A and B**, respectively, hereto and incorporated herein by reference.

10.     Firemen's issued a Commercial General Liability Policy to Dragas, Policy No. CPA 0120994-10, and a Commercial Umbrella Policy bearing the same policy number, CPA 0120994-10, for the policy period February 5, 2007, through February 5, 2008.

11.     Builders Mutual issued a Commercial Package Policy, Policy No. 0013394 03, for the policy period from February 5, 2006, through February 5, 2007. The limits under the Commercial Package Policy are $1 million per occurrence and $2 million aggregate with a $100,000 per occurrence deductible. A copy of the 2006-2007 Commercial Package Policy is attached as **EXHIBIT C** hereto and incorporated herein by reference.

12.     In February 2009, Dragas made a claim and demand for coverage from Builders Mutual related to property damage due to "Chinese Drywall" installed in certain residences constructed by one or more insureds under policies issued by Builders Mutual to Dragas (the "Chinese Drywall claim").

13. Upon information and belief, Hanover issued one or more policies of insurance to Porter-Blaine Corporation ("Porter-Blaine"), the company utilized by Dragas to install the Chinese Drywall.

14. On April 6, 2009, following an investigation of the Chinese Drywall claim, Builders Mutual denied coverage for the Chinese Drywall claim on grounds that the claim was excluded under the Total Pollution Exclusion contained in all Builders Mutual policies that might be applicable to the claim. In addition, certain other policy provisions applied to exclude coverage with regard to one or more Builders Mutual policies.

15. As of the date of the Chinese Drywall claim, Dragas had already begun the process of negotiating and resolving property damage claims in connection with Chinese Drywall and had settled at least one such claim. In addition, lawsuits against Dragas arising out of the use of Chinese Drywall in Dragas-built homes appear imminent. As such, this case is ripe for declaratory adjudication.

## Chinese Drywall

16. The installer of drywall in certain residences built by Dragas is Porter-Blaine. Upon information and belief, Porter-Blaine first accepted a shipment of Chinese Drywall on February 14, 2006, and thereafter only used Chinese Drywall between that time and November 2006.

17. Homeowners in certain residences built by Dragas where Chinese Drywall was used have complained of rotten-egg smells in their houses, corrosion-related air conditioning failures, failures of televisions and microwaves, and health-related complaints including headaches, rashes, watery eyes, sinus congestion, apnea, coughing, sore throats and fatigue.

18. Upon information and belief, homeowners' complaints in residences where Chinese

Drywall has been used result from the off-gassing from the drywall of sulfur compounds. In response to similar complaints related to Chinese Drywall used in residences in Florida, tests conducted for a builder, Lennar Corporation ("Lennar") and for the Florida Health Department indicated the off-gassing of multiple sulfur compounds from Chinese Drywall, including compounds associated with corrosion and with irritation of the eyes, nose or throat.

19.  The results of testing conducted for Lennar are summarized in a December 22, 2008, memorandum from ENVIRON, the company engaged by Lennar to conduct its testing, to the Florida Department of Health. That report stated that "ENVIRON discovered that [Chinese Drywall] was emitting reduced sulfur (sulfide) gases capable of affecting copper HVAC coils". Laboratory testing of air samples from affected homes detected trace levels of two sulfide gases, which, based on previous ENVIRON studies, are associated with emissions from Chinese Drywall: carbon disulfide and carbonyl sulfide. A copy of that ENVIRON memorandum dated December 22, 2008, is attached hereto and incorporated by reference as **EXHIBIT D**.

20.  Upon information and belief, hydrogen sulfide may also be associated with emissions from Chinese Drywall.

21.  Testing conducted for the Florida Health Department identified certain differences between Chinese Drywall and drywall manufactured in the United States, including trace levels of strontium sulfide and iron sulfide found in the Chinese Drywall, as well as higher organic material and production of a sulfur odor when heated. The tests also found that black corrosion on a copper metal tube was a copper oxide/copper sulfide deposit, apparently attributed to vapors in the residential atmosphere that contained sulfur creating a corrosive environment.

22.  According to the federal Agency for Toxic Substances and Disease Registry

(ATSDR), both carbon disulfide and hydrogen sulfide have a foul odor, smelling like rotten eggs, and may irritate the eyes and mucous membranes. Both carbon disulfide and hydrogen sulfide are included in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980's ("CERCLA") priority list of hazardous substances. The Environmental Protection Agency's (the "EPA") Air Toxics website lists carbonyl sulfide as having similar irritant properties; and all three compounds are listed as hazardous air pollutants.

## INSURANCE POLICIES

23.  Builders Mutual issued a Commercial Package Policy to Dragas, both for policy periods from March 1, 2008, to March 1, 2009 (the "Builders Mutual 2008-2009 Policies"). *See* **EXHIBITS A and B.**

24.  Prior to the 2008-2009 policy period, Dragas was insured under a Commercial General Liability Policy issued by Firemen's for the policy period February 5, 2007, through February 5, 2008, with limits of coverage of $1 million per occurrence and $2 million aggregate, and a Commercial Umbrella Policy for the same policy period, with limits of coverage of $2 million per occurrence and $2 million aggregate (the "Firemen's Insurance 2007-2008 Policies").

25.  Prior thereto, Dragas was insured under a Commercial Package Policy, issued by Builders Mutual, for the policy period from February 5, 2006, through February 5, 2007 (the "Builders Mutual 2006-2007 Policy"). *See* **EXHIBIT C.**

26.  At Section I, Coverage A, (1)(a), the Commercial General Liability Coverage Forms of Commercial Package Policy No. CPP 0029923 01 and Commercial Package Policy No. 0013394 03 provide, in relevant part, for payment of "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

Such section further provides, in relevant part, that "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B."

27. At Section I, Coverage A, (1)(b), the Commercial General Liability Coverage Forms of Commercial Package Policy No. CPP 0029923 01 and Commercial Package Policy No. 0013394 03 provide, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

> "(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory;' and
>
> "(2) The 'bodily injury' or 'property damage' occurs during the policy period."

28. At Section I, Coverage A, (1)(a) of Commercial Umbrella Policy No. UMB 0008545 provides, in relevant part, for payment of "the 'ultimate net loss' in excess of the 'retained limit' because of bodily injury' or 'property damage' to which this insurance applies."

29. Commercial Package Policies No. CPP 0029923 01 and No. 0013394 03, and Commercial Umbrella Policy No. UMB 0008545 each define "Occurrence" to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

30. Commercial Package Policies No. CPP 0029923 01 and No. 0013394 03, and Commercial Umbrella Policy No. UMB 0008545 each provide, at Section I, Coverage A, (2) of each policy, in relevant part, that:

> This insurance does not apply to:
>
> (a) 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. * * *

### *The Total Pollution Exclusion*

31.     The Builders Mutual 2008-2009 Policies and the Builders Mutual 2006-2007 Policy each contain a TOTAL POLLUTION EXCLUSION ENDORSEMENT (the "Total Pollution Exclusion"). In the Builders Mutual 2008-2009 Policies, the Total Pollution Exclusion is contained in Endorsement CG 2149 to the Commercial General Liability Coverage Form of the Commercial Package Policy, and Endorsement BCU 21 25 to the 2008-2009 Umbrella Policy. In the Builders Mutual 2006-2007 Policy, the Total Pollution Exclusion is contained in Endorsement CG 2149 to the Commercial General Liability Coverage Form of the Commercial Package Policy.

32.     The Total Pollution Exclusion excludes from coverage "'bodily injury' or 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The term "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

### *"Your Work" Exclusion*

33.     Pursuant to Endorsement BCU 22 64 of the Builders Mutual 2008-2009 Umbrella Policy, and at Endorsement BCG 22 94 of the Builders Mutual 2006-2007 Policy, coverage is excluded for "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". "Your work" is defined under each policy to mean (1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations, and includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work';

and the providing of or failure to provide warnings or instructions. "Product completed operations hazard" is defined as including all "bodily injury" and "property damage" "occurring away from premises you own or rent and arising out of 'your product' or 'your work'" except "products that are still in your physical possession" or "work that has not yet been completed or abandoned."

### *Exclusion 'm'*

34. Pursuant to Exclusion "m" of the Policies, coverage is excluded for "property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) a delay or failure by you or anyone on your behalf to perform a contract or agreement in accordance with its terms.

### COUNT I
### (Declaration Of Rights As To Indemnity And Defense)

35. Plaintiff incorporates the allegations contained in Paragraphs 1-34 of this Complaint as if set forth fully herein.

36. The off-gassing of the sulfur compounds from the Chinese Drywall clearly constitutes the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time", and the compounds, which are known to be contaminants and irritants, clearly come within the definition of pollutants as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, alkalis, chemicals and waste".

37. As such, no coverage exists for the claims related to Chinese Drywall because they are unambiguously excluded by the Total Pollution Exclusion contained in each potentially applicable policy; and Builders Mutual is entitled to a declaration to that effect.

38. No coverage exists for damages to Dragas' work for the additional reason that such damage coverage is excluded by Exclusion "m" of the Policies.

39. Moreover, with the exception of the 2008-2009 Commercial Package Policy, no coverage exists for damage to Dragas' work for the additional reason that such coverage is excluded by virtue of the policies' "your work" exclusions, as amended by Endorsements BCG 22 94 of the 2006-2007 Commercial Package Policy and BCU 22 64 of the 2008-2009 Commercial Umbrella Policy.

40. Assuming *arguendo,* coverage is not otherwise excluded, each installation of Chinese Drywall constitutes a separate occurrence to which the $100,000 per occurrence deductible provisions of Commercial Package Policies No. CPP 0029923 01 and No. 0013394 03 apply.

### Count II
### (Allocation Of Indemnity And Defense Costs)

41. Plaintiff incorporates the allegations contained in Paragraphs 1-40 of this Complaint as if set forth fully herein.

42. In the alternative, should it be determined that there is coverage for the Chinese Drywall claim, Builders Mutual should be liable for only that portion of any indemnity or defense expense that represents a fair allocation to limits among all insurers who are or may have been responsible for the payment of such costs.

WHEREFORE, Plaintiff prays this Court order the following relief:

    a.    Determining and adjudicating the rights and liabilities of the parties under Plaintiff's policies of insurance;

    b.    Declaring that Plaintiff Builders Mutual Insurance Company has no duty to defend or indemnify Dragas Management

          Corporation or any other insured under any policy issued to Dragas with respect to the Chinese Drywall claims;

c.     Declaring, in the alternative, that Builders Mutual is only liable for that portion of indemnity and defense expense that represents a fair allocation to limits among all parties who are or may have been responsible for the payment of such indemnity and defense costs; and

d.     For such other and further relief as is just and equitable.

          Respectfully submitted,

          BUILDERS MUTUAL INSURANCE COMPANY
          By Counsel

SANDS ANDERSON MARKS & MILLER
A Professional Corporation

_/s/ Lisa Taylor Hudson_

Danny M. Howell    VA Bar # 30352
Michael T. Marr    VA Bar # 48536
Lisa Taylor Hudson    VA Bar # 45484
1481 Chain Bridge Road
Suite 200
McLean, VA 22101
(703) 893-3600 (telephone)
(703) 893-8484 (facsimile)
dhowell@SandsAnderson.com
mmarr@SandsAnderson.com
lhudson@SandsAnderson.com
     *Counsel for Plaintiff, Builders Mutual Insurance Company*

11